UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEWARD HOLY FAMILY HOSPITAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> MASSACHUSETTS NURSES ASSOCIATION, <br><br> Defendant. | Civ. A. No. 1:17-cv-11245 |

## COMPLAINT

This is an action brought by Steward Holy Family Hospital, Inc. (the "Hospital") pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et. seq.*, to vacate an arbitrator's award, which the arbitrator issued in excess of the powers granted to him in the collective bargaining agreement in effect between the Hospital and the Massachusetts Nurses Association ("MNA"). The Arbitrator ignored the express terms of the parties' collective bargaining agreement – which gave disciplinary discretion to the Hospital and prohibited him from substituting his judgment for that of the Hospital – and ordered the reinstatement of a terminated nurse who had a history of abusive conduct and who had committed battery on a fellow nurse.

### I. JURISDICTION & VENUE

1.  This Court has jurisdiction over this matter pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, and 28 U.S.C. § 1331.

1

2. Venue is proper in this District pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1391 because the subject matter of the grievance to which the arbitration award at issue relates arose at the Hospital's campus in Methuen, Massachusetts and the arbitration award was issued in Massachusetts.

## II. PARTIES

3. Steward Holy Family Hospital, Inc. is a Delaware corporation with a principal place of business at 111 Huntington Avenue, Boston, Massachusetts 02199.

4. Massachusetts Nurses Association is an unincorporated labor organization within the meaning of 29 U.S.C § 185 and represents employees in an industry affecting interstate commerce. MNA maintains a principal office at 340 Turnpike Street, Canton, Massachusetts 02021.

## III. FACTS

### The Collective Bargaining Agreement and the Hospital's Policies

5. The Hospital and MNA are parties to a collective bargaining agreement ("CBA") that provides for the terms and conditions of employment for all full-time, regularly part-time, limited part-time and per diem registered nurses, diabetes educators, cardiac rehab nurses, oncology nurses, operating room nurses, operating room service leaders, and case managers employed by the Hospital at its campus located at 70 East Street, Methuen, Massachusetts. A true and accurate copy of the Collective Bargaining Agreement (effective December 2, 2013 to October 1, 2016) is attached hereto as Exhibit A.

6. Article V of the CBA, the Management Rights clause, expressly retains the right of the Hospital "to discipline and discharge Employees for just cause . . . ." Ex. A, Art. V, § 1.

7. Article XXXIII of the CBA provides as follows:

A Nurse who has completed his/her probationary period and has acquired seniority under this Agreement shall not be suspended, discharged, demoted or otherwise disciplined except for just cause. Discipline may include, but is not limited to, counseling, verbal warnings, written warnings, suspension and/or termination. **The Hospital may utilize whatever level of discipline it believes is appropriate**

> **depending on the circumstances, but will make reasonable efforts to utilize progressive discipline.**

Ex. A, Art. XXXIII, § 1 (emphasis added).

8.  Article X of the CBA sets forth a process by which an aggrieved employee can challenge the Hospital's disciplinary decision through a three-step grievance process and arbitration. Ex. A, Art. X, § 2.

9.  Employee grievances that are not satisfactorily resolved during the grievance process may be referred to arbitration. Ex. A, Art. X, § 2.

10. However, "[t]he Arbitrator's authority shall be limited to the interpretation and application of the parties' Agreement.  **No arbitrator shall have the authority to add to, subtract from, or modify the Agreement in any respect, or to substitute his/her discretion or judgment for that of the Hospital . . . .**" Ex. A, Art. X, § 5 (emphasis added).

11. The Hospital also maintains a Workplace Civility Policy within its Code of Conduct. This policy requires all Hospital employees to "[t]reat all coworkers and individuals with respect, patience and courtesy; [r]efrain from conduct that would intimidate or threaten individuals; [and] [n]ever engage in abusive or disruptive behavior . . . ." A true and accurate copy of the Code of Conduct is attached hereto as Exhibit B.

12. Employees are warned that a "[f]ailure to comply with this Code, Steward policies or applicable law will subject workforce members to disciplinary action up to and including termination of employment." Ex. B at 4.

13. The Hospital also maintains a Zero Tolerance for Disrespect Policy which builds on the Code of Conduct's Workplace Civility rules and cautions Hospital employees that the Hospital "will not tolerate verbal, written or physical conduct by anyone who works or practices at [the Hospital] which . . . [c]reates an intimidating, offensive or hostile environment . . . [or] [d]isrupts the

operation of the hospital or individuals working therein[.]" A true and accurate copy of the Zero Tolerance for Disrespect Policy is attached hereto as Exhibit C.

14. "Disruptive conduct" for the purpose of the Zero Tolerance Policy is defined as "[v]erbal or physical intimidation; . . . [a]ttacks, threats or other conduct (physical or verbal) directed at members of the medical staff [or] hospital employees . . ., which are personal, inappropriate, or exceed the bounds of fair and decent behavior. Ex. C at 1.

15. Violators of the Hospital's Zero Tolerance Policy are "subject to appropriate corrective action and/or disciplinary action up to and including termination of employment." Ex. C at 2.

16. The Hospital also maintains a Disciplinary Action Policy which provides guidelines for conduct of employees at the Hospital. A true and accurate copy of the Disciplinary Action Policy is attached hereto as Ex. D.

17. The Disciplinary Action policy provides a series of recommended disciplinary actions for certain behaviors such as "threatening, intimidating, or coercing fellow employees" for which "immediate termination of employment" is recommended for the first offense. Ex. D at 2-3.

18. The Disciplinary Action policy likewise provides that "[e]mployees covered by a collective bargaining agreement should check their contracts for specific language pertaining to this policy. Where there is a conflict the language in the collective bargaining agreement will prevail for those employees in the covered bargaining unit." Ex. D at 1.

### The Discharge of Maureen Bean and the Grievance

19. Maureen Bean ("Bean") was a nurse at the Hospital's Methuen campus and a member of the bargaining unit.

20. Bean received yearly training sessions regarding the Hospital's Code of Conduct and Workplace Civility Policy and was fully aware of the Hospital's rules regarding workplace civility.

4

21. On January 21, 2016, Bean yelled "this is bullshit" directly at her supervisor in response to having been told that a vacation request had been denied.

22. On January 22, 2016, Bean again confronted her supervisor following the posting of a schedule in which Bean mistakenly believed that she would be forced to work a night shift.

23. Bean confronted her supervisor in her office yelling "I'm not going to fucking do it" while banging her finger on the supervisor's desk.

24. Bean's outburst was observed by others and loud enough to be heard at the nurses' station.

25. Bean was issued a verbal warning on January 25, 2016 for violating the Hospital policy to "treat all coworkers and individuals with respect, patience and courtesy; [and] [n]ot tolerate . . . any conduct that harasses, disrupts or interferes with another workforce member's work or performance." A true and accurate copy of the Jan. 25, 2016 warning is attached hereto as Exhibit E.

26. Bean was provided another copy of the Steward Code of Conduct along with a copy of the verbal warning.

27. Between January 28 and February 1, 2016 Bean called the home of her colleague, Nancy Waterhouse at least four times to pressure her to withdraw a vacation requested for the same period that Bean had requested.

28. Bean left three different voice messages insisting that Ms. Waterhouse call her.

29. When Ms. Waterhouse relented, Bean told her that she could not have her vacation and Ms. Waterhouse responded as follows: "I'm not going to worry about it. It'll work its way out, whatever happens will happen, it'll work its way out for the best" and ended the call.

30. On February 2, 2016 Bean assaulted and battered Ms. Waterhouse as she attempted to leave the Hospital's breakroom.

31. As Bean walked through the door, she reached up and grabbed Ms. Waterhouse by the face, like she was scolding a child and shook her head while laughing and puckering her lips and saying "did you get your vacation all straightened out?"

32. Later that same day, as Ms. Waterhouse was gathering medication from the machine, Bean approached her from behind and ran her finger across Ms. Waterhouse's back and stated "I didn't mean to upset you back there, we need to do something about this vacation policy."

33. Following Ms. Waterhouse's report of these incidents the Hospital conducted a full and thorough investigation.

34. In the Hospital's judgment, termination was the only appropriate disciplinary action.

35. MNA grieved Bean's termination and the parties submitted the grievance to arbitration for determination by Arbitrator Michael W. Stutz.

## The Arbitration Proceeding and Award

36. The arbitration hearing took place over four days in late 2016 and 2017 before Arbitrator Stutz. An official transcript of the hearing was prepared.

37. The parties stipulated to the following issue: Was the termination of Maureen Bean for just cause? If not, what shall be the remedy?

38. On June 8, 2017 Arbitrator Stutz issued his decision ordering the Hospital to reinstate Maureen Bean. A true and accurate copy of the Arbitration Award is attached as Exhibit F.

39. In his decision, Arbitrator Stutz found that Bean's testimony and her denials were "unbelievable and untruthful." Ex. F at 13.

40. Arbitrator Stutz agreed that Bean had been previously counseled by her supervisor for "angrily pulling a colleague's ponytail," Ex. F at 14, and that the Hospital had issued her a verbal warning the week before the face-grabbing incident for "profanely defying [her manager's] directive." Ex. F at 7.

41. Arbitrator Stutz further found that Bean's "action was an inappropriate, unconsented touching that was motivated, in part, by the grievant's frustration . . . ." and that "[t]he grievant's conduct was an unconsented touching, a civil battery, but not a violent act that justifies termination in the first instance, without progressive discipline." Ex. F at 13-15.

42. According to the Arbitrator, "[o]nly the most serious misconduct, so-called 'capital' offenses in the workplace, justifies termination without resort to progressive discipline. These capital offenses include violence, theft, dishonesty and gross insubordination." Ex. F at 15.

43. Despite finding that "the grievant was guilty of the misconduct for which there was just cause to impose discipline[,]" Ex. F at 14, and finding at least two incidents in which the grievant was disciplined in the past for similar behavior, Arbitrator Stutz inexplicably and in disregard for the limits on his authority barring him from "add[ing] to, subtract[ing] from, or modify[ing] the Agreement," added his own progressive discipline policy to the parties' CBA. Ex. A, Art. X, § 5.

44. According to the Arbitrator, the grievant must receive discipline at each step of his self-imposed progressive discipline policy before she may be terminated:

> The grievant was at the verbal warning level of discipline in a system of progressive discipline that includes a written warning and final written warning before termination. Therefore, she was not subject to termination for the misconduct in this case, but should receive the next level of discipline, a written warning, to persuade her to correct unacceptable conduct.

Ex. F at 15.

45. The progressive discipline policy invented by the Arbitrator differs from the Hospital's Code of Conduct, its Zero Tolerance for Disrespect Policy, and its Disciplinary Action Policy.

46. The Arbitrator's progressive discipline policy also violates Art. XXXIII § 1 of the CBA, which commands that "[t]he Hospital may utilize whatever level of discipline it believes is appropriate depending on the circumstances, but will make reasonable efforts to utilize progressive discipline." In this case, although the Hospital utilized the progressive discipline that it believed to be

7

appropriate in the circumstances, the Arbitrator imposed the discipline *he* believed to be appropriate, in clear violation of the contract.

47. The Arbitrator substituted his judgment for that of the Hospital. The Hospital's Director of Human Resources, Patricia Gauron, described at arbitration the factors she took into account in making the termination decision, as follows:

> Well, I looked at the fact that very recently she [the grievant] had just had an outburst with her manager, for which she received a verbal warning. I took into consideration the severity of grabbing a colleague in the manner that was described to me. Looking at the interview and reading all of the information, and of course the unfortunate incident with Katie Powers and the hair pulling, I found to be disturbing that there had possibly been more than one very severe inappropriate interaction. I thought that really together with those items, intimidating or people feeling as uncomfortable as they were is not, it really in my opinion led me to believe that it wasn't a truthful conversation that I had with Maureen [grievant], and that, you know, in order to make a more comfortable working environment for the staff there that she be terminated.

Dec. 9, 2016 Hearing Transcript at 268:24-269:3-19. A true and accurate excerpt of this transcript is attached hereto as Exhibit G.

## COUNT I

48. The Hospital re-alleges and incorporates Paragraphs 1-47 as if fully set forth herein.

49. Arbitrator Stutz exceeded his powers by adding a progressive discipline policy to the CBA in violation of Article X of the CBA.

50. Arbitrator Stutz exceed his powers by finding that the Hospital can only terminate the grievant without resorting to progressive discipline for "capital offenses includ[ing] violence, theft, dishonesty and gross insubordination."

51. Arbitrator Stutz exceed his powers and substituted his own judgment for that of the Hospital in violation of Article X of the CBA.

52. Arbitrator Stutz exceeded his powers by imposing the discipline he considered appropriate, rather than the discipline the Hospital believed appropriate, in violation of Article XXXIII of the CBA.

8

53. Arbitrator Stutz exceed his powers and dispensed his own brand of industrial justice in place of the terms set forth in the CBA when, despite finding that the Hospital had just cause to discipline the grievant, he ordered that the grievant be reinstated.

54. Because Arbitrator Stutz exceeded his limited authority under the terms of the CBA and his award does not draw its essence from the CBA, this Court should vacate the Award pursuant to 9 U.S.C. § 10(a)(4).

WHEREFORE, Plaintiff respectfully requests that:

a. This Court enter a judgment vacating the Award or modifying the Award to conform to the requirements of the Agreement and applicable law.

b. This Court grant Plaintiff such other and further relief as may be just and proper.

Respectfully submitted,

STEWARD HOLY FAMILY HOSPITAL, INC.

*/s/ Joshua D. Nadreau*
Joseph W. Ambash (BBO No. 017060)
Joshua D. Nadreau (BBO No. 688970)
FISHER & PHILLIPS LLP
200 State Street, 7th Floor
Boston, Massachusetts 02109
T: (617) 722-0044
F: (617) 532-5899
jambash@fisherphillips.com
jnadreau@fisherphillips.com

Dated: July 7, 2017