United States District Court
District of Massachusetts

```
————————————————————————    )
                            )
STEWARD HOLY FAMILY HOSPITAL, )
INC.,                        )
                            )
          Plaintiff,         )
                            )
          v.                 )
                            )
MASSACHUSETTS NURSES         )        Civil Action No.
ASSOCIATION,                 )        17-11245-NMG
                            )
          Defendant.         )
                            )
MASSACHUSETTS NURSES         )
ASSOCIATION,                 )
                            )
          Counter Claimant,  )
                            )
          v.                 )
                            )
STEWARD HOLY FAMILY HOSPITAL, )
INC.,                        )
                            )
          Counter Defendant. )
————————————————————————    )
```

## MEMORANDUM & ORDER

**GORTON, J.**

This case arises out of a disputed arbitration between
Steward Holy Family Hospital, Inc. ("the Hospital" or
"plaintiff") and the Massachusetts Nurses Association ("the MNA"
or "defendant") after the Hospital discharged one of its
employees (a member of the MNA) for alleged misconduct.
Plaintiff asserts that the arbitrator exceeded the scope of his
authority under the Collective Bargaining Agreement ("the CBA")

when he reinstated the employee and ordered that she receive
back-pay.  The Hospital now seeks an order vacating the
arbitration award which the MNA urges the Court to confirm.

Before the Court are plaintiff's motion for summary
judgment and defendant's motion for judgment on the pleadings
or, in the alternative, for summary judgment.  For the reasons
that follow, plaintiff's motion for summary judgment will be
allowed and defendant's motion for summary judgment will be
denied.

## I.    Background

### A. The CBA

Plaintiff operates an acute care hospital in Methuen,
Massachusetts.  Defendant is the authorized collective
bargaining representative of the registered nurses employed at
the Hospital.  The Hospital and the MNA entered into a CBA which
was effective from December 2013 through October 2016.

Article XXXIII of the CBA, entitled "Discipline and
Discharge", provides that a nurse who has completed a
probationary period and acquired seniority may not be suspended,
demoted, discharged or otherwise disciplined except for "just
cause".  That section also provides that discipline may include
counseling, verbal warnings, written warnings, suspension and/or
termination and that

> [t]he Hospital may utilize whatever level of discipline it believes is appropriate depending on the circumstances, but it will make reasonable efforts to utilize progressive discipline. (emphasis added)

Article V of the CBA, however, expressly retains the exclusive right of the Hospital

> to discipline and discharge Employees for just cause . . . [and] to issue, amend and enforce reasonable work rules and policies not inconsistent with the provisions of this Agreement.

Appendix G to the CBA explains that all existing employment policies applicable to hospital employees are incorporated into the agreement so long as they do not contradict an express term of the CBA.

One such incorporated policy is the Hospital's Disciplinary Action Policy. That policy provides that employees who engage in certain behavior, such as "threatening, intimidating, or coercing fellow employees", known as "Group III" offenses, are subject to immediate termination from employment on the first offense. Group III incorporates by reference the Hospital's Zero Tolerance for Disrespect Policy which states that the Hospital

> will not tolerate verbal, written or physical conduct by anyone who works or practices at [the Hospital] which . . . [c]reates an intimidating, offensive or hostile environment . . . , [d]isrupts the operation of the hospital or individuals working therein . . . [or] [d]amages the hospital's reputation in the community it serves.

The policy defines "disruptive conduct" as, among other things,

[v]erbal or physical intimidation . . . [or] [a]ttacks,
threats or other conduct (physical or verbal) directed at
members of the medical staff [or] hospital employees . . .
which are personal, inappropriate, or exceed the bounds of
fair and decent behavior.

Article X of the CBA, entitled "Grievance and Arbitration",

sets forth a grievance procedure that may be used to resolve

disputes between the Hospital and its employees and also

provides for arbitration if a grievance remains unresolved.  The

parties agreed that the arbitrator's authority

shall be limited to the interpretation and application of
the parties' Agreement.  No arbitrator shall have the
authority to add to, subtract from, or modify the agreement
in any respect, or to substitute his/her discretion or
judgment for that of the Hospital.  The Arbitrator's
decision on any duly submitted grievance shall be final and
binding upon the parties and any aggrieved Nurse or Nurses.
(emphasis added)

**B. The Discharge**

Maureen Bean was a registered nurse at the Hospital and a

member of the bargaining unit represented by the MNA.  During

the course of her employment, Bean received verbal warnings

several times for inappropriate behavior at work that violated

hospital policy, including pulling a colleague's hair and

profanely defying an order of her supervisor.

Between January 28 and February 1, 2016, Bean called the

home telephone of her colleague Nancy Waterhouse five times to

pressure her to withdraw a request for vacation that conflicted

with Bean's request for vacation time.  On February 2, 2016, as

Bean entered the hospital breakroom, she grabbed Waterhouse by the face and shook her head while laughing and saying "Did you get your vacation all straightened out?"  After an investigation, the Hospital determined that, in light of Bean's history and the severity of the physical confrontation, termination was the appropriate disciplinary action.

### C. The Grievance and Arbitration

The MNA filed a grievance challenging the Hospital's decision to discharge Bean.  Defendant alleged that the discharge was not for "just cause" because some lesser form of discipline should have been employed rather than termination.  The grievance was not resolved and was submitted to arbitration.

The parties selected an arbitrator to hear and decide the grievance and an evidentiary hearing was convened.  The parties, by joint submission, stipulated to the following issues for the arbitrator to decide:

> Was the termination of Maureen Bean for just cause?  <u>If not, what shall be the remedy?</u> (emphasis added)

During the course of the hearing, the Hospital argued that the CBA prohibited the arbitrator from substituting his judgment for that of the Hospital.  Plaintiff also submitted a post-hearing brief arguing that "the arbitrator is not tasked with determining whether he would reach the same conclusion" as the

Hospital and that it was entitled under the CBA to "utilize whatever level of discipline it believes is appropriate".

In June 2017, the arbitrator ruled that, despite the Hospital's arguments and the language of the CBA, there was no "just cause" for Bean's termination and he ordered the Hospital to reinstate her with back-pay. In his decision, the arbitrator found that Waterhouse had testified truthfully about the encounter with Bean and that Bean's denials were "unbelievable and untruthful". The arbitrator determined that Bean's conduct was an inappropriate and unconsented touching and that Waterhouse felt "bullied and harassed". Nevertheless, while the arbitrator found that Bean's conduct constituted "a civil battery", he determined it was "not a violent act that justifies termination in the first instance, without progressive discipline". The arbitrator concluded that while Bean "was guilty of misconduct for which there was just cause to impose discipline", that discipline should have been the next level in the Hospital's self-imposed progressive discipline policy, i.e. a written warning.

In explaining his decision to reduce Bean's sanction, the arbitrator explained that

> [o]nly the most serious misconduct, so-called "capital" offenses in the workplace, justifies termination without resort to progressive discipline. These capital offenses include violence, theft, dishonesty and gross insubordination.

He stated that an employee must receive discipline at each step of the progressive discipline policy before he or she may be terminated.

The Hospital argues that the arbitrator's decision 1) violates the provisions of the CBA that a) permit the Hospital to utilize whatever level of discipline it determines to be appropriate and b) prohibit the arbitrator from substituting his own judgment for that of the Hospital and 2) directly contradicts its written disciplinary policy. The Hospital thus seeks an order vacating the arbitrator's award while the MNA petitions for its confirmation. Before the Court are the parties' cross-motions for summary judgment.

## II. __Motions for Summary Judgment__

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co._,_ 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc._,_ 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the
suit under the governing law . . . ." <u>Anderson</u> v. <u>Liberty Lobby,
Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue of material
fact exists where the evidence with respect to the material fact
in dispute "is such that a reasonable jury could return a
verdict for the nonmoving party." <u>Id.</u>

If the moving party satisfies its burden, the burden shifts
to the non-moving party to set forth specific facts showing that
there is a genuine, triable issue. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477
U.S. 317, 324 (1986).  The Court must view the entire record in
the light most favorable to the non-moving party and make all
reasonable inferences in that party's favor. <u>O'Connor</u> v.
<u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is
appropriate if, after viewing the record in the non-moving
party's favor, the Court determines that no genuine issue of
material fact exists and that the moving party is entitled to
judgment as a matter of law.

**B. Overview of the Parties' Arguments**

There is no dispute as to any material fact.  Each party
thus asserts that it is entitled to summary judgment as a matter
of law.

The Hospital contends that the arbitrator exceeded the
scope of his authority under the CBA by substituting a lesser
form of discipline for that imposed by the Hospital.  It asserts

-8-

that the arbitrator ignored the plain language in the CBA which
1) permits the Hospital to utilize whatever form of discipline
it deems appropriate and 2) restrains the arbitrator from
substituting his own discretion or judgment for that of the
Hospital.  Plaintiff submits that under the terms of the CBA,
the arbitrator is limited to determining whether a) the employee
in fact engaged in the conduct for which she was disciplined and
b) that conduct constituted a violation of the Hospital's
disciplinary policy.  The Hospital submits that once the
arbitrator made those determinations, he was not permitted to go
further and determine the appropriate remedy for that violation.
Furthermore, the Hospital maintains that the arbitrator's
reliance on a strict progressive disciplinary policy effectively
rewrites the established hospital policy in violation of the
unambiguous terms of the CBA.

    The MNA rejoins that the arbitrator's interpretation of the
scope of his authority under the CBA was a plausible
interpretation of the contract and thus the Court cannot vacate
his award.  Defendant maintains that: 1) plaintiff waived the
argument that the CBA deprived the arbitrator of the authority
to reduce Bean's penalty by failing to raise that argument
during the arbitration hearing, 2) the CBA does not contain a
so-called "automatic discharge provision" with a list of
specific conduct constituting <u>per</u> <u>se</u> "just cause" for

termination and 3) in the absence of such a provision, the
contract does not foreclose the arbitrator's normal authority to
review an employer's termination decision for "just cause" and
to substitute his or her own form of discipline.

Finally, even assuming that the CBA forecloses the
arbitrator's authority to substitute his own judgment for that
of the Hospital, the MNA suggests that the Hospital effectively
waived that restriction when it agreed to submit to the
arbitrator the issues of "just cause" and the appropriate remedy
for Bean's misconduct.  The Hospital responds that the
stipulated issues were a standard submission that did not
otherwise alter the express terms of the CBA limiting the
arbitrator's authority.

### C. District Court Review of Arbitration Awards

#### 1. Legal Standard

District court review of an arbitration award is
exceedingly deferential and "among the narrowest known in the
law". Salem Hosp. v. Mass. Nurses Ass'n, 449 F.3d 234, 237 (1st
Cir. 2006) (quoting Me. Cent. R.R. Co. v. Bhd. of Maint. of Way
Emps., 873 F.2d 425, 428 (1st Cir. 1989)).  So long as there is
a plausible basis for the arbitrator's interpretation of the
agreement, the reviewing court must uphold the arbitrator's
decision even if the court would interpret the agreement
differently. UMass Mem'l Med. Ctr., Inc. v. United Food &

-10-

Commercial Workers Union, 527 F.3d 1, 5 (1st Cir. 2008); see
also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,
484 U.S. 29, 38 (1987) ("[A]s long as the arbitrator is even
arguably construing or applying the contract and is acting
within the scope of his authority, that a court is convinced he
committed serious error does not suffice to overturn his
decision."). Nevertheless, "an arbitrator's decision is not
entirely impervious to judicial oversight". Salem Hosp., 449
F.3d at 238. It is essential that

> the power and authority of an arbitrator is totally derived
> from the collective bargaining agreement and [the
> arbitrator] violates his obligation to the parties if he
> substitutes his own brand of industrial justice for what
> has been agreed to by the parties in that contract.

Ga.-Pac. Corp. v. Local 27, United Paperworkers Int'l Union, 864
F.2d 940, 944 (1st Cir. 1988) (internal quotation marks omitted)
(quoting United Steelworkers v. Enter. Wheel & Car, 363 U.S.
593, 597 (1960)); see also Misco, 484 U.S. at 38 (holding that
the arbitrator's award "must draw its essence from the
contract").

Essentially two lines of First Circuit Court of Appeals
decisions have emerged with respect to judicial review of
arbitration awards. The first line of cases holds that where
the CBA clearly and unambiguously lists the offenses for which
immediate discharge is appropriate, the arbitrator is precluded
from substituting his own form of discipline for that of the

employer. See, e.g., Poland Spring Corp. v. United Food &
Commercial Workers Local 1445, 314 F.3d 29, 34 (1st Cir. 2002)
("This Court has long held that once an arbitrator finds that an
employee has committed an act specifically listed in the
collective bargaining agreement as providing just cause for
termination, the arbitrator is not free to fashion a separate
remedy apart from the one provided by the parties' agreement.");
Ga.-Pac., 864 F.2d at 944 ("If the language of an agreement is
clear and unequivocal, an arbitrator cannot give it a meaning
other than that expressed by the agreement."); S.D. Warren Co.
v. United Paperworkers' Int'l Union, 845 F.2d 3, 8 (1st Cir.
1988) ("[T]he company and the union negotiated and incorporated
into the collective bargaining agreement the disciplinary rules
and the resulting penalties for violations of these rules.
Nothing is left to the arbitrator's judgment except determining
whether the rules are violated.").

     The second line of cases holds that where the terms of the
CBA do not unambiguously provide that certain conduct is always
"just cause" for discharge, i.e. the language is not an
"automatic discharge provision", then the contract does not
foreclose the arbitrator's authority to reduce the penalty. See
Crafts Precision Indus. Inc. v. Lodge No. 1836, Int'l Ass'n of
Machinists & Aerospace Workers, 889 F.2d 1184, 1185-86 (1st Cir.
1989) ("[T]he language of the Agreement here is substantially

more open, or ambiguous, than the language at issue in [S.D.
Warren and Georgia-Pacific].");  Wyman-Gordon Co. v. United Steel
Workers of Am., 337 F. Supp. 2d 241, 245 (D. Mass. 2004) ("Where
a range of discipline is available to an employer, courts have
held that arbitrators retain significant discretion to review a
company's choice of discipline.");  see also Bos. Med. Ctr. v.
Serv. Emps. Int'l Union, Local 285, 260 F.3d 16, 23 n.5 (1st
Cir. 2001);  Mirant Canal, LLC v. Local Union 369, No. 09-cv-
12216, 2010 WL 2900435, at *7 (D. Mass. July 22, 2010).

In addition to the terms of the CBA, the arbitrator also
derives his or her authority from the parties' submission.
Dorado Beach Hotel Corp. v. Union de Trabajadores de la
Industria Gastronomica de P.R. Local 610, 959 F.2d 2, 4 (1st
Cir. 1992);  El Dorado Tech. Servs., Inc. v. Union General de
Trabajadores de P.R., 961 F.2d 317, 320 (1st Cir. 1992) ("[O]nce
an issue has been committed to arbitration, both the collective
bargaining agreement and the submission itself should be taken
into account in determining the scope of the submission.").

While the First Circuit has not directly decided whether
the parties' submission can supersede the express limitations on
the arbitrator's authority provided in the CBA, other Circuit
Courts of Appeals have concluded that the submission cannot
expand the arbitrator's authority in violation of any provision
of the CBA. See Butler Mfg. Co. v. United Steelworkers of Am.,

-13-

AFL-CIO-CLC, 336 F.3d 629, 634-35 (7th Cir. 2003) ("In the case of submissions . . . , the court must also make sure that the arbitrator's consideration of the new issue would not violate any other provision of the agreement, assuming that the parties did not observe whatever formalities were required to modify the underlying agreement itself." (citation omitted)); United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, 889 F.2d 940, 946 (10th Cir. 1989) ("Extension of the arbitrator's authority through submissions is only allowed to the extent that the submission does not violate an express provision of the collective bargaining agreement."); see also CITGO Asphalt Ref. Co. v. Paper, Allied-Indus., Chem., & Energy Workers Int'l Union, Local No. 2-991, 385 F.3d 809, 818-20 (3d Cir. 2004) (holding that the arbitration award did not draw its essence from the CBA where the arbitrator substituted his own judgment for that of the company in violation of an express provision of the contract, even though the parties submitted the issue to the arbitrator); Dorado Beach, 959 F.2d at 4 n.3 (distinguishing a prior case vacating an arbitration award on the basis that the prior decision cited no authorization in the CBA or other authority, whereas the arbitrator in the present case found the CBA and the parties' submissions together authorized the arbitrator's award).

The First Circuit has stated, however, that where the party
maintains its objections to the scope of the arbitrator's
authority, it cannot be said that the party waived those
objections through its submission. See Coady v. Ashcraft &
Gerel, 223 F.3d 1, 9 n.10 (1st Cir. 2000) (rejecting the
argument that the party waived its objection to the scope of the
arbitrator's authority where it "consistently and vigorously
maintained its objection to the scope of arbitration" at the
hearing).

## 2. Application

There are two issues presented here: 1) whether the terms
of the CBA unambiguously foreclose the arbitrator's authority to
reduce the termination to a written warning and 2) even if so,
whether the arbitrator was nevertheless authorized to impose a
lesser sanction for Bean's misconduct based on the parties'
joint submission.

### i. Scope of the Arbitrator's Authority Under the CBA

As an initial matter, the Hospital did not waive the
argument that the CBA restricted the arbitrator's authority to
review its termination decision and substitute a lesser form of
discipline.  The arbitrator acknowledged in his arbitration
award that the Hospital contested his authority to substitute
his judgment for that of the Hospital.  As a consequence, the
Court finds that plaintiff did not waive that argument.

The terms of the CBA in this case are more analogous to those at issue in Georgia-Pacific and S.D. Warren than in Crafts Precision.  As in the first two cited cases, the incorporated disciplinary policy expressly provides that certain threatening or physical conduct will subject the employee to termination on the first offense. See Poland Spring, 314 F.3d at 31 (describing the terms of the CBA which enumerated certain offenses that were subject to immediate discharge); Ga.-Pac., 864 F.2d at 944-45 ("The language of the agreement is unequivocal in that it establishes two independent justifications for dismissal: 1) just cause and 2) a list of offenses . . . for which immediate discharge is appropriate." (emphasis in original)); S.D. Warren, (explaining that "the company and the union negotiated and incorporated into the collective bargaining agreement the disciplinary rules and the resulting penalties for violations of these rules" which removed the arbitrator's authority to determine the sanction once she concluded that a particular rule had been breached).  By providing that an employee who engages in a Group III offense is subject to immediate termination and listing the kinds of conduct that constitute a Group III offense, the Hospital and MNA effectively agreed to an automatic discharge provision for such conduct.

The language of the disciplinary policy in this case differs from the provision at issue in Crafts Precision.  There,

-16-

the CBA provided that "[e]mployees shall comply with all
reasonable shop rules" and that certain conduct "may result in
suspension, or immediate discharge, for the first offense" but
did not specifically provide that a violation of any particular
shop rule automatically constituted "just cause" for
termination. See Crafts Precision, 889 F.2d at 1184-85.  Here,
the incorporated disciplinary policy expressly provides that
threatening conduct or physical contact is "just cause" for
immediate termination.  Indeed, the Hospital's disciplinary
policy provides that "[d]ischarge may result from . . . a Level
III offense" and elsewhere suggests that "immediate termination
of employment" is the recommended disciplinary action for such
an offense.

The arbitrator determined that Bean had engaged in conduct
for which there was "just cause" to discipline and found that
her conduct constituted a "civil battery".  Such a finding is
consistent with the Hospital's determination that Bean had
engaged in a Group III offense for which immediate termination
was justified under its disciplinary policy.  Once the
arbitrator determined that Bean had engaged in the specific
alleged misconduct in violation of the Hospital's policy, his
role was fulfilled. See S.D. Warren, 845 F.2d at 8.  By going
further and reducing the discipline imposed by the Hospital to
what he believed was more appropriate, the arbitrator was

prescribing his own brand of industrial justice in violation of the plain terms of the contract.

The Court's determination that the arbitrator exceeded the scope of his authority under the CBA is bolstered by two other contractual provisions.  First, the CBA provides that "[n]o arbitrator shall have the authority to add to, subtract from, or modify the agreement in any respect".  By deciding that only so-called "capital offenses" justify termination in the first instance, the arbitrator effectively modified the Hospital's disciplinary policy which provided for termination for certain "first offenses".  Second, the CBA anticipates that

> [t]he Hospital may utilize whatever level of discipline it
> believes is appropriate depending on the circumstances [and
> the arbitrator shall not] substitute his/her discretion or
> judgment for that of the Hospital.

That provision is an additional limitation on the arbitrator's authority to review plaintiff's disciplinary decisions.  By substituting his own judgment for that of the Hospital, the arbitrator violated that express provision and thus exceeded the scope of his authority under that agreement. See Local 217, Int'l Union of Elec., Radio and Mach. Workers v. Holtzer-Cabot Corp., 277 F. Supp. 704, 707-08 (D. Mass. 1967) (holding that where the CBA provided that "the arbitrators shall have no power to substitute their discretion for the Company's discretion in cases where such discretion is reserved to the Company", the

arbitrator exceeded the scope of his authority by reducing the
sanction imposed by the company).

### ii. Scope of the Arbitrator's Authority Under the Parties' Joint Submission

The Court must still determine whether, despite contractual
limitations on the arbitrator's authority, the Hospital
nevertheless empowered him by virtue of its submission to decide
the appropriate sanction.  The Court is compelled to construe
the parties' CBA and submission together to determine the scope
of the arbitrator's authority. See Dorado Beach, 959 F.2d at 4
n.3.  Although the parties submitted to the arbitrator the issue
of the appropriate remedy for Bean's misconduct, they did not
authorize a contradiction of an express provision of the CBA.
Butler Mfg., 336 F.3d at 634-35; Safeway Stores, 889 F.2d at
946.

Here, the submission on its face seems to contradict the
provision of the CBA prohibiting the arbitrator from
substituting his judgment or discretion for that of the
Hospital.  The First Circuit has left open the question of what
contractual language may be sufficient to foreclose an
arbitrator from crafting his or her own remedy. See N. New Eng.
Tel. Operations LLC v. Local 2327, Int'l Bhd. of Elec. Workers,
AFL-CIO, 735 F.3d 15, 21 (1st Cir. 2013) ("[W]ithout foreclosing
the possibility that the text of some arbitration clauses might

limit an arbitrator's power of contract construction to a greater extent than the background law, we find that the generic no-modification provision in question evidences no intent to circumscribe the arbitrator's authority beyond our accepted standard." (citation omitted) (internal quotation marks omitted) (quoting Kraft Foods, Inc. v. Office & Prof'l Emps. Int'l Union, AFL-CIO, Local 1295, 203 F.3d 98, 101 (1st Cir. 2000))).

The Court concludes that the provision prohibiting the arbitrator from substituting his judgment for that of the Hospital is sufficient to foreclose his conduct here even though the parties purportedly submitted the remedy issue for arbitration. Cf. CITGO Asphalt, 385 F.3d at 818-20 (holding that where the CBA contains a provision prohibiting the arbitrator from substituting his own judgment for that of the company, the arbitrator's determination of the best policy for the company is invalid even though the parties agreed to allow the arbitrator to consider that issue). The Hospital did not intend its submission to expand the arbitrator's authority beyond the limitations provided in the contract which is evidenced by the objections made to the arbitrator's authority at the hearing and in its post-hearing brief. See Coady, 223 F.3d at 9 n.10. Nor does the MNA argue that the submission constituted a modification of the CBA that eliminated the contractual restrictions on the arbitrator's authority. See Butler Mfg. Co.,

336 F.3d at 634-35 (where the parties fail to follow the formalities to modify an underlying agreement, a submission cannot expand the arbitrator's authority in violation of any other provision of the CBA). The arbitrator's award did not therefore draw its essence from the parties' agreement.

The Court also relies on the First Circuit's decision in Georgia-Pacific. In that case, the First Circuit held that the arbitrator exceeded the scope of his authority under the CBA when he altered the employer's form of discipline. Ga.-Pac., 864 F.2d at 945. The First Circuit held that the arbitrator had exceeded the scope of his authority even though the parties had submitted to him the issue of the appropriate remedy. Id. at 942 ("The agreed issue submitted for decision was: Was the grievant properly discharged for dishonesty under . . . the labor agreement [and] [i]f not, what shall be the remedy?"). Identical language was used in the submission in this case and, just as in Georgia-Pacific, that standard submission is insufficient to override the express limitation on the arbitrator's authority found in the CBA. Accordingly, the arbitrator exceeded the scope of his authority and his award will be vacated.

## ORDER

For the foregoing reasons, plaintiff's motion for summary judgment (Docket No. 22) is **ALLOWED** and defendant's motion for

judgment on the pleadings or, in the alternative, for summary judgment (Docket No. 25) is **DENIED**.  The arbitrator's award is **VACATED**.

**So ordered.**

                                        _/s/ Nathaniel M. Gorton_____
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated November 21, 2018